RECEIVED

Jason S. Ritchie
Michael P. Manning
Bryan M. Kautz
RITCHIE MANNING KAUTZ PLLP
175 N. 27th St.
Suite 1206
Billings. MT 59101
Telephone: (406) 601-1400
Fax: (406) 545-0412
jritchie@rmkfirm.com
mmanning@rmkfirm.com
bkautz@rmkfirm.com

*Attorneys for Plaintiff*

JUN **3 0** 2021

**BROWNING, KALECZYC,
BERRY & HOVEN, PC**

CLERK OF THE
DISTRICT COURT
TERRY HALPIN

2021 FEB -2  A II: 03

FILED

BY
DEPUTY

## MONTANA THIRTEENTH JUDICIAL DISTRICT COURT
### YELLOWSTONE COUNTY

| | |
|---|---|
| ESTATE OF EDWARD R. CHAMPION. by and through Debbie Cellan. individually and as Personal Representative | Cause No.: DV  2 1 - 0 1 3 4 |
| | Judge: |
| | **ROD SOUZA** |
| *Plaintiff,* | |
| v. | **COMPLAINT AND JURY DEMAND** |
| LEGACY HEALTHCARE FINANCIAL SERVICES. LLC: CASCADE CAPITAL GROUP. LLC: SHAWNA JOHNSON: and JOHN DOES 1-25. | |
| *Defendants.* | |

**Exhibit B**

Plaintiff, the Estate of Edward R. Champion (the Estate), by and through counsel, states and alleges the following for its Complaint against Defendants Legacy Healthcare Financial Services, LLC (Legacy Healthcare), Cascade Capital Group, LLC (Cascade Capital), and Shawna Johnson:

## PARTIES, JURISIDICTION AND VENUE

1.     Edward R. Champion was an individual who formerly resided in Yellowstone County, Montana. Specifically, Edward resided at Avantara of Billings, a skilled nursing facility in Billings, Montana, from April 10, 2020 until his death on September 13, 2020.

2.     Debbie Cellan is an individual residing in Yellowstone County, Montana. She is Edward Champion's daughter and was appointed the personal representative of the Estate by the Montana Thirteenth Judicial District Court on November 19, 2020 in Probate No. DP 20-0362.

3.     Legacy Healthcare is an Illinois limited liability company with its principal place of business in Skokie, Illinois. Legacy Healthcare is the operator of Avantara of Billings.

4.     Cascade Capital is an Illinois limited liability company with its principal place of business in Skokie, Illinois. Cascade Capital is the owner of Avantara of Billings.

5.     Shawna Johnson is an individual residing in Yellowstone County, Montana. Johnson was a registered nurse at Avantara of Billings and provided care to Edward Champion during his time as a resident there, including, but not limited to, providing care on September 13, 2020.

1

6.    John Does 1-25 represent all entities or individuals who caused or
contributed to the Estate's damages in any way, whose identities are currently
unknown to the Estate.

7.    This Court has subject matter jurisdiction over this and all civil
matters under Montana Constitution, Article VII, Section 4(1).

8.    This Court has personal jurisdiction over the parties in this case under
Montana Rule of Civil Procedure 4(b) because the parties are either found within
the State of Montana or the Estate's claims arise from the parties' transaction of
business within Montana or the parties' commission of any act resulting in accrual
within Montana of a tort action.

9.    Venue is appropriate in this Court under Mont. Code Ann. § 25-2-
122(b), because the Defendants committed torts in Yellowstone County.

## GENERAL ALLEGATIONS

10.    The Estate incorporates by reference its allegations contained in
Paragraphs Nos. 1-9 as if fully set forth herein.

11.    According to its website, Cascade Capital "is an independent,
privately-held healthcare real estate investment and management company focused
on acquiring underperforming/value-add skilled nursing, rehabilitation, post-acute,
and transitional care facilities."

12.    Cascade Capital was launched in 2016 by the same leadership team
that built Legacy Healthcare. It represents that it "is rapidly growing its portfolio
size and value" and bills itself as "among the most active independent skilled

2

nursing facility investors" and as "experts in distressed assets/turnarounds."
Cascade Capital advertises that owns more than 135 actively managed facilities in
23 states and has conducted "transactions on over $1 billion of real estate to date."

13.    In or about February 2018, Cascade Capital purchased two skilled
nursing facilities in Montana as part of a $13.7 million transaction. One of those
skilled nursing facilities is now known as Avantara of Billings and is located at
2115 Central Avenue in Billings, Montana.

14.    According to Cascade Capital's February 28, 2018 press release,
Avantara of Billings is managed by Cascade Capital's "operating partner," Legacy
Healthcare. Upon information and belief, the managers of Cascade Capital and the
managers Legacy Healthcare are the same two individuals—Menachem Shabat and
Chaim Rajchenbach.

15.    Legacy Healthcare claims that it is "one of the country's leading
providers of residential healthcare services." Legacy Healthcare currently services
51 facilities across 3 states, including Avantara of Billings.

16.    Edward Champion became a resident at Avantara of Billings
(Avantara) on April 10, 2020. At the time, Edward was 71 years old and suffered
from congenital deafness. He also had a history of depressive disorder and
generalized anxiety.

17.    Due to Edward's deafness, he could not speak directly with Avantara's
staff and, because the COVID-19 pandemic necessitated that staff wear masks, he
was not able to read lips either. Edward's principal means of communication with

3

both Avantara's staff was supposed to be a web-based device that allowed him to communicate via sign language with an interpreter on a TV screen and for the interpreter to then communicate directly with Avantara staff in his room.

18.    Because of Edward's deafness and the prohibition on visitors due to COVID-19, that communication device was also Edward's sole means of communicating with his family and anyone else outside of Avantara while he was at the facility.

19.    Avantara was well-aware of Edward's need for the communication device. Its records indicate that Edward's daughter informed the facility within three days of Edward's arrival that he had a webcam ready to be hooked up to his TV. Edward's daughter also provided contact information so that Edward could have video calls with her.

20.    Nevertheless, Avantara inexplicably failed to set up Edward's communication device at any point during his time as a resident. Likewise, Edward's Care Plan dated April 17, 2020 did not identify the device despite Avantara's knowledge that he needed it to communicate.

21.    Over the next few months, both Edward's family repeatedly requested that his communication device be set up. Edward's own handwritten notes also contain repeated references to the device and indicated that he wanted to leave if his "interpretation tv" was not made to work. In response, staff members falsely told Edward that the device was not working or that the staff member did not know how to work it and that someone else would need to set it up. During an

4

investigation into Avantara by the Montana Department of Health and Human Services (DPHHS), an Avantara staff member admitted that the facility never installed the communication device so that Edward could communicate with his family or anyone else outside Avantara.

22.     Not surprisingly, Edward's Care Plan and other Avantara records indicate that Edward became easily agitated due to his difficulty communicating. But rather than setting up his communication device or taking other appropriate steps to address Edward's fundamental needs, Avantara sedated him for the first few weeks of his time as a resident.

23.     When Edward arrived at Avantara, he had a prescription for olanzapine, which is a mood stabilizer, but has a sedative effect when given on a regular basis. Edward's prescription allowed olanzapine to be administered on an as-needed basis for agitation. On at least five days in Edward's first two weeks at Avantara, however, staff administered olanzapine despite Edward's records revealing that he did not experience any episodes of agitation on those days. Avantara also administered olanzapine at least once after Edward's doctor discontinued the prescription.

24.     Meanwhile, Edward's health and general condition deteriorated rapidly at Avantara. He lost 11 pounds in his first month at the facility and received showers only twice per week despite that he sometimes wet himself. His doctors also noted that he was unkempt during visits and that his usually friendly demeanor changed after moving to Avantara.

5

25.    Avantara also placed Edward in a room with a resident who screamed nearly constantly on the premise that the screaming would not bother Edward due to his deafness. Indeed, staff consistently joked and laughed about it.

26.    Avantara identified Edward as a high fall risk in a Fall Care Plan dated April 15, 2020 and continued to do so in various Fall Risk Evaluation forms completed throughout his time as a resident. Yet, Avantara took no documented measures to prevent or mitigate Edward's fall risk.

27.    Edward suffered a fall at Avantara on September 4, 2020 that required him to be transported to Billings Clinic. Avantara's Falls Management Policy, as amended in December 2019, required Avantara to take certain mandatory steps after a resident's fall, including a post-fall assessment, certain notifications, an investigation, immediate consultation with the resident's physician, and post-fall injury prevention.

28.    Following Edward's fall on September 4, 2020, Avantara performed only one of the required steps under its Falls Management Policy, performing a fall risk evaluation a full week later, on September 11, 2020. That evaluation rated Edward as a 16 on a scale where anything above 8 indicated a high fall risk. But despite that rating and its own policy, Avantara did not conduct the required investigation, did not consult with Edward's physician, and did not institute any post-fall injury prevention plan.

29.    While Edward was at Billings Clinic following his September 4, 2020 fall, he tested positive for COVID-19. His condition was good enough, however, that

6

Billings Clinic released him to return to Avantara on September 10, 2020. When Billings Clinic released him, it did so with very specific orders. In addition to implementing notification requirements for specific symptoms, Edward's physician, Dr. Irene Lohkamp, ordered that Avantara monitor his oxygen saturation three times every day.

30.    Due to extreme understaffing and woefully inadequate training, Avantara failed to provide even basic care for Edward following his return to the facility on September 10, 2020. On that day, Avantara's COVID-19 unit was staffed by a single certified nursing assistant (CNA) covering eleven patients by herself for more than five hours. Specifically, the on-duty nurse left about 10:00 a.m. and another did not arrive until 3:00 p.m. During that time, the CNA on duty made multiple phone calls and sent text messages to another staff member asking when a nurse would arrive. The only answer she received was, "soon." Consequently, when Edward returned from Billings Clinic at 11:45 a.m., Avantara did not have anyone available to set up his oxygen or to receive a report from the ambulance crew who performed the transfer. The CNA attempted to get help, but nobody came to assist her.

31.    Avantara also failed to follow Dr. Lohkamp's orders. Avantara's records reveal that it first checked Edward's oxygen saturation on September 10, 2020 at 7:01 p.m., more than seven hours after he returned from Billings Clinic. It next checked his oxygen saturation at 9:17 p.m. for the second and last time that

7

day. Then, Avantara did not check Edward's oxygen saturation again for nearly 11 hours, and only then after he experienced another fall.

32.     On the morning of September 11, 2020, Avantara allowed Edward to walk by himself to the bathroom with no assistance. At approximately 8:00 a.m., a CNA found Edward on his back next to the toilet. Edward indicated that he had hit his head and pointed to the left side of his face. Although it was immediately apparent that Edward was injured, Avantara waited for more than an hour before calling an ambulance at 9:25 a.m. to transport him to Billings Clinic.

33.     All the while, Avantara failed to notify Edward's family about his status. At 12:37 p.m. on September 11, 2020, Avantara called Edward's daughter, not to inform her about her father's fall, but to tell her that additional staff and residents had tested positive for COVID-19. At that point, she did not even know that Edward had returned from Billings Clinic the previous day, much less than he had been taken back by ambulance three hours earlier. She found out only because she asked about Edward's status when Avantara called her for an unrelated reason.

34.     At Billings Clinic, doctors performed a head scan on Edward, which was negative but revealed a fracture of his C-5 vertebrae of indeterminate age. Sometime after 4:00 p.m. that day, Billings Clinic released Edward to return to Avantara. Again, Avantara ignored its own Falls Management Policy. It did not complete a fall assessment, perform any investigation into Edward's fall on the morning of September 11, 2020, consult with his physician, or implement any fall prevention measures.

8

35.   Avantara also again ignored critical orders from Edward's physicians about monitoring his vital signs. When Edward returned from Billings Clinic on September 11, 2020, Dr. Lohkamp ordered Avantara to monitor Edward every four hours for vital signs—temperature, respiratory rate, pulse, oxygen saturation, and blood pressure—and other COVID-19 symptoms. If Edward had any elevated temperature or new or worsening respiratory symptoms, Avantara was to call the on-call doctor immediately.

36.   When Edward was readmitted to Avantara on September 11, 2020, his oxygen saturation was 95% while on 5 liters per minute of oxygen.

37.   Avantara first measured Edward's oxygen at 8:00 p.m. on September 11, 2020—about four hours after his return from Billings Clinic. At that point, Edward's oxygen saturation was 91% while receiving oxygen via a nasal cannula. Notwithstanding that the reading—which bears on respiratory function was significantly worse than when he returned to the facility that afternoon, Avantara did not call the on-call doctor as Dr. Lohkamp ordered.

38.   Avantara did not measure any of Edward's other vital signs at 8:00 p.m. despite Dr. Lohkamp's orders to do so every four hours. Instead, it first measured all his vital signs at 10:30 p.m. on September 11, 2020—some six and a half hours after he returned from Billings Clinic. At that point, his blood pressure had increased somewhat and his oxygen saturation was 93% while receiving oxygen via a nasal cannula, still worse than when he returned from Billings Clinic at 4:00 p.m. Still, Avantara did not call the on-call doctor.

9

39.     At 12:18 p.m. on September 12, 2020, Avantara measured all of Edward's vital signs again. Those readings demonstrated some improvement over the course of the previous two hours, but Edward's oxygen saturation was still at 94%, which was lower than when he arrived back from Billings Clinic. Nevertheless, Avantara removed his nasal oxygen sometime between the 10:30 p.m. reading on September 11, 2020 and the 12:18 a.m. reading on September 12, 2020, and did not call the on-call doctor.

40.     After the 12:18 a.m. vital sign reading, Avantara did not check any of Edward's vital signs again until measuring his oxygen saturation at 8:11 a.m. on September 12, 2020—eight hours later.  By then, Edward was back on nasal oxygen and his saturation level had deteriorated substantially to 90%. Again, Avantara did not call the on-call doctor or take any other action.

41.     At 8:09 p.m. on September 12, 2020, Avantara measured all of Edward's vital signs for the first time in 20 hours. Those measurements revealed improvement. Specifically, Edward's oxygen saturation was up to 95% without oxygen and his other results were the best since he had returned from Billings Clinic. When Avantara filled them into its Administration Record Report, however, it did not just do so for the 8:00 p.m. entry on September 12, 2020. Rather, it fraudulently backfilled the 8:00 p.m. measurements to reflect that Edward had recorded precisely the same blood pressure, pulse, respiratory rater, oxygen saturation, and temperature at 4:00 a.m., 8:00 a.m., 12:00 p.m., 4:00 p.m., and 8:00 p.m. that day.  That record was inconsistent with the Weights and Vitals Summary

10

in Edward's records that reveal that Avantara, in fact, failed to monitor and record Edward's vital signs every four hours on September 12, 2020, particularly given that Edward's oxygen saturation was measured at 8:11 a.m. on September 12, 2020 at 90%, yet is reported at 95% in Avantara's Administration Record Report.

42.    Early in the morning of September 13, 2020, Edward's condition took a dramatic turn for the worse. Avantara measured his vital signs at 1:32 a.m. and discovered that his blood pressure was low, his pulse was high and irregular, his respiratory rate had increased substantially, his oxygen saturation had dropped to 90% and he had a 102.4-degree fever.

43.    Despite that Edward was in obvious, severe respiratory distress, Avantara inexplicably did nothing. The staff member on duty at the time told DPHHS investigators that she did not call the on-call doctor as Dr. Lohkamp had ordered. Nor did she notify a nurse supervisor.

44.    From there, Avantara did virtually nothing while Edward died over the course of the next ten hours. To start, Avantara took no action whatsoever for five hours after learning that Edward was in severe respiratory distress and had a fever and other worsening vital signs at 1:32 a.m. on September 13, 2020.

45.    At approximately 6:30 a.m. on September 13, 2020, a CNA came on duty at Avantara and was immediately instructed by a nurse to take Edward's vital signs because he had just been found on the floor. This fall is not documented in Avantara's records and Avantara did not notify the on-call doctor. When the CNA went to Edward's room, she discovered him face down on his bed, shaking and

11

struggling to breathe. She repositioned him on his back and recalled to a DPHHS investigator that he had a temperature over 102 and labored respirations. The CNA reported giving a nurse a piece of paper containing Edward's vital signs, but the only vital sign recorded in Avantara's records for that time frame is an oxygen saturation level of 90% on room air at 7:04 a.m.

46.     After 6:30 a.m. on September 10, 2020, Edward fell at least three more times over the next few hours. The final time, a CNA found Edward at the foot of his bed and staff struggled to get him back into bed. The CNA and on-duty nurse gave somewhat conflicting accounts to state investigators. The CNA reported that Edward died on the floor while waiting for the nurse to retrieve a Hoyer lift to get him back in bed. The nurse, on the other hand, claimed that she and the CNA were able to get Edward back in bed and that he died immediately upon getting in bed. Both agree that that the nurse assessed Edward and confirmed that he died shortly following his final fall near his bed.

47.     At no time during any of this ordeal did Avantara's staff call 9-1-1 or otherwise seek professional assistance. They did, however, call both of Edward's daughters—at 10:18 a.m. and 10:20 a.m., respectively—to see if his daugthers— neither of whom are medical professionals—thought they should call 9-1-1. Avantara then called one of Edward's daughters back at 10:31 a.m. to notify her of Edward's death.

48.     At 8:00 p.m. on September 13, 2020, Legacy Healthcare's general counsel, Eli Rosenblum, called Edward's daughter to convey his view that Edward's death was due to Billings Clinic releasing him to return to Avantara too soon.

49.     On September 24, 2020, Edward's daughter initiated a complaint with DPHHS, which subsequently investigated and performed:  (a) a COVID-19 Emergency Preparedness abbreviated survey on September 25, 2020; (b) a Complaint survey on September 25, 2020; and (c) a COVID-19 Focused Infection Control survey on September 30, 2020.

50.     The survey resulted in a finding of an "Immediate Jeopardy" situation due to deficiencies in Edward's care.  The Centers for Medicare and Medicaid Services (CMS) assign an "immediate jeopardy" rating when there is a "situation in which [a] provider's noncompliance . . . is likely to cause serious injury, harm, impairment, or death to a resident."  The survey also identified that Avantara failed to comply with numerous federal requirements imposed on skilled nursing facilities who participate in Medicare with respect to both Edward's care and the care of numerous other residents.

## FIRST CAUSE OF ACTION
## (Negligent Care - Against All Defendants)

51.     The Estate incorporates by reference the allegations set forth in Paragraphs 1 through 50 of this Complaint.

52.     Defendants owed Edward Champion a duty to provide him skilled with skilled nursing care, supervision, and to care for his general health and safety.

13

53.     Defendants Legacy Healthcare and Cascade Capital breached their duties of care to Edward by any and all of the following:  (a) failing to set up his web-based communication device or otherwise facilitate a means of communication for Edward; (b) failing to bathe him regularly; (c) medicating him unnecessarily; (d) placing him in a room with a resident who screamed constantly; (e) failing to implement appropriate measures to prevent or mitigate Edward's fall risk; (f) failing to follow their own fall-related policies following Edward's falls; (g) abusing, neglecting, or otherwise failing to provide adequate care for Edward during his time as a resident at Avantara of Billings, including, but not limited to, failing to provide adequate care for Edward following his returns from Billings Clinic on September 10, 2020 and September 11, 2020; (h) ignoring Edward's doctors orders; (i) failing to adequately communicate with Edward's family or other representatives; and (j) failing to adhere to state and federal guidelines.

54.     Defendant Shawna Johnson personally breached her duty of care to Edward by abusing, neglecting, or otherwise failing to provide competent care to Edward as a registered nurse including, but not limited to, failing to provide adequate care to Edward on September 13, 2020.

55.     Defendants acted with actual malice, as defined in Mont. Code Ann. § 27-1-221(2), because they had knowledge of facts or intentionally disregarded facts that created a high probability of injury to Edward, and they either deliberately proceeded to act in conscious or intentional disregard of the high probability of

14

injury to Edward or deliberately proceeded to act with indifference to the high probability of injury to Edward.

56.    The Estate suffered injuries and damages, including for survival and wrongful death, as a direct and proximate cause of Defendants' negligence.

## SECOND CAUSE OF ACTION
### (Negligent Management – Against Legacy Healthcare and Cascade Capital)

57.    The Estate incorporates by reference the allegations set forth in Paragraphs 1 through 56 of this Complaint.

58.    Cascade Capital is a for-profit investment company that touts its ability to acquire and maximize the value of skilled nursing facilities, as well as its rapidly growing portfolio size. Among other things, Cascade Capital advertises that it was launched by the same leadership team that built Legacy Healthcare and that its familiarity with skilled nursing facilities allows it to identify early indicators of financial performance that it then uses to improve its portfolio management.

59.    Legacy Healthcare is Cascade Capital's operating partner and, according to Secretary of State filings in Illinois, its registered managers are the same two individuals who are the registered managers of Cascade Capital. Legacy Healthcare's principal office address is also the same as Cascade Capital's principal office address.

60.    Avantara of Billings is part of Cascade Capital's asset portfolio and is operated by Legacy Healthcare.

61.    Cascade Capital and Legacy Healthcare had a duty to Edward Champion and other residents at Avantara to make reasonable, non-medical

15

business and management decisions that would not jeopardize their care or their general health and safety.

62.    Cascade Capital and Legacy Healthcare breached that duty by making and executing non-medical business and management decisions with the motivation of reducing the cost of operating Avantara of Billings and/or maximizing Avantara of Billings' value to Cascade Capital's portfolio at the expense of patient care and safety.

63.    These non-medical business and management decisions included, but are not limited to: (a) operating Avantara of Billings via an Illinois-based entity managed by the same individuals as Cascade Capital with no physical presence in Montana and no previous experience operating a skilled nursing facility in Montana; (b) failing to adequately staff and/or supply Avantara of Billings; (c) failing to adequately train staff at Avantara of Billings; and (d) failing to adequately supervise staff at Avantara of Billings.

64.    Cascade Capital and Legacy Healthcare knew or should have known that their non-medical business and management decisions created sub-standard conditions and care at Avantara. They acted with actual malice, as defined in Mont. Code Ann. § 27-1-221(2), because they had knowledge of facts or intentionally disregarded facts that created a high probability of injury to Edward and other residents, and they either deliberately proceeded to act in conscious or intentional disregard of the high probability of injury to Edward and other residents or

16

deliberately proceeded to act with indifference to the high probability of injury to Edward and other residents.

65.     The Estate suffered injuries and damages, including for survival and wrongful death, as a direct and proximate cause of Cascade Capital's and Legacy Healthcare's negligence with respect to non-medical business and management decisions.

## THIRD CAUSE OF ACTION
### (Negligence *Per Se* – Against Legacy Healthcare and Cascade Capital)

66.     The Estate incorporates by reference the allegations set forth in Paragraphs 1 through 65 of this Complaint.

67.     Legacy Healthcare and Cascade Capital owed Edward Champion a duty to comply with the Montana Elder and Persons With Developmental Disabilities Abuse Prevention Act, Mont. Code Ann. § 52-3-801, *et seq.*, and the federal public health regulations set forth in 42 C.F.R. Subpart B.

68.     Legacy Healthcare and Cascade Capital breached their duty to Edward by not complying with the state and federal laws and regulations identified in Paragraph 67.

69.     The state and federal laws and regulations identified in Paragraph 67 were enacted to prevent the abuse and neglect of elderly persons and persons with developmental disabilities. Edward Champion was a member of that protected class.

70.     The Estate suffered injuries and damages, including for survival and wrongful death, as a direct and proximate result of Legacy Healthcare's and

17

Cascade Capital's negligence *per se*, and their injuries were of the sort which the state and federal laws and regulations identified in Paragraph 67 were enacted to prevent.

### FOURTH CAUSE OF ACTION
### (Negligent Misrepresentation – Against Legacy Healthcare)

71.    The Estate incorporates by reference the allegations set forth in Paragraphs 1 through 70 of this Complaint.

72.    Legacy Healthcare, in the course of its business, repeatedly represented to Edward Champion and his family that it provided state-of-the-art healthcare, that its values and mission are centered around improving the lives of its residents, that it had a high standard of quality of care, and that it maintained the highest standards of care.

73.    Legacy Healthcare, in its capacity as the operator of Avantara of Billings, also repeatedly represented to Edward and his family that his communication device was not working or would be set up shortly.

74.    Legacy Healthcare made those representations to influence Edward's and his family's decision first about whether Edward should become a resident of Avantara, and then their decision about whether he should remain a resident of Avantara

75.    Legacy Healthcare's representations were untrue and Legacy Healthcare made the representations without any reasonable ground for believing them to be true.

18

76.     Edward and his family were justified in relying on Legacy Healthcare's representations.

77.     As a direct and proximate cause of Legacy Healthcare's negligent misrepresentations. the Estate suffered injuries and damages.

## FIFTH CAUSE OF ACTION
### (Violation of the Montana Consumer Protection Act – Against Legacy Healthcare and Cascade Capital)

78.     The Estate incorporates by reference the allegations set forth in Paragraphs 1 through 77 of this Complaint.

79.     The Montana Unfair Trade Practices and Consumer Protection Act of 1973. Mont. Code Ann. § 30-14-101, *et seq.* (MCPA), prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

80.     Edward Champion was a consumer under the MCPA.

81.     Legacy Healthcare and Cascade Capital engaged in unfair or deceptive acts and practices in the conduct of their commerce or trade, including, but not limited to:  (a) misrepresenting to Edward and his family the scope of Legacy Healthcare's and Cascade Capital's abilities and services; and (b) making non-medical business and management decisions that knowingly imperiled Edward's safety, health and welfare without disclosing those business decisions, the dangerous conditions created by those decisions, or past instances in which those decisions resulted in sub-standard care to other residents.

82.     As a direct and proximate cause of Legacy Healthcare's and Cascade Capital's unfair or deceptive acts and practices, the Estate suffered injuries and damages.

19

## SIXTH CAUSE OF ACTION
### (Wrongful Death and Survival – Against All Defendants)

83.     The Estate incorporates by reference the allegations set forth in Paragraphs 1 through 82 of this Complaint.

84.     As a direct and proximate result of the actions and inactions of the Defendants as alleged above, Edward was neglected, abused, and/or received substandard care resulting in his death. Prior to his death, the Defendants actions and inactions caused Edward additional damages, including emotional distress and pain and suffering. Edward's heirs have suffered loss of consortium, comfort, care, support, society, and companionship of their deceased loved one and have incurred damages as a result.

## SEVENTH CAUSE OF ACTION
### (Unjust Enrichment – Against Legacy Healthcare and Cascade Capital)

85.     The Estate incorporates by reference the allegations set forth in Paragraphs 1 through 84 of this Complaint.

86.     During his time as a resident at Avantara of Billings, Edward Champion conferred a financial benefit on Legacy Healthcare, as the operator of Avantara, and Cascade Capital, as the owner of Avantara, by paying monthly rents and any other fees and expenses associated with his residency at Avantara.

87.     Legacy Healthcare and Cascade Capital were aware of and/or appreciated the benefit conferred on them by Edward. Indeed, Legacy Healthcare's and Cascade Capital's business model is fundamentally premised on making profit from the operation and ownership of skilled nursing facilities.

20

88.    Given the actions and inactions of Legacy Healthcare and Cascade
Capital alleged above, their acceptance and retention of the benefit conferred by
Edward would be inequitable without payment of its value.

89.    Accordingly, Legacy Healthcare and Cascade Capital have been
unjustly enriched and should be required to pay the Estate the value of the benefit
conferred on them by Edward.

## EIGHTH CAUSE OF ACTION
### (Conspiracy – Against Legacy Healthcare and Cascade Capital)

90.    The Estate incorporates by reference the allegations set forth in
Paragraphs 1 through 90 of this Complaint.

91.    Acting in concert, Legacy Healthcare and Cascade Capital conspired to
unjustly enrich themselves by underfunding and understaffing Avantara of Billings,
and/or by failing to take corrective action despite knowing of substandard care and
conditions at Avantara of Billings.

92.    The object of Legacy Healthcare's and Cascade Capital's conspiracy
was to reduce the cost of operating Avantara of Billings to increase financial returns
from the business, despite their conduct resulting in inadequate care to Edward
Champion and other residents.

93.    Upon information and belief, insufficient income from the operation of
Legacy Healthcare, Cascade Capital, and Avantara of Billings was directed toward
the reasonable and proper operation of Avantara of Billings, and was instead
channeled, directly or indirectly, to Cascade Capital, Legacy Healthcare, and those
entities members and managers, at least some of whom overlapped.

21

94.     Legacy Healthcare and Cascade Capital had a meeting of the minds regarding their conspiracy.

95.     Legacy Healthcare and Cascade Capital took one or more unlawful overt acts in furtherance of such conspiracy.

96.     As a direct and proximate result of Legacy Healthcare's and Cascade Capital's conspiracy, the Estate suffered injuries and damages.

### REQUEST FOR JURY TRIAL

Pursuant to Rule 38(b) of the Montana Rules of Civil Procedure, the Estate respectfully demands a trial by jury on all claims and issues so triable.

### PRAYER FOR RELIEF

**WHEREFORE**, the Estate prays for judgment against Defendants as follows:

1.    For judgment in favor of the Estate and against Defendants;

2.    For compensatory damages in an amount to be proven at trial, including, but not limited to, wrongful death and survival damages;

3.    For consequential damages;

4.    For treble damages and attorneys' fees under Mont. Code Ann. § 30-14-101, *et seq.*

5.    For punitive and exemplary damages;

6.    For costs, interest, and pre-judgment interest as determined by the Court; and

22

7.   For such other and further relief that this Court deems just and

proper.

Dated:  February 2, 2021

*Jason Ritchie* (signature)

Jason S. Ritchie
Michael P. Manning
Bryan M. Kautz
RITCHIE MANNING KAUTZ PLLP
175 N. 27th Street
Suite 1206
Billings, MT 59101

*Attorneys for Plaintiff*

23

Jason S. Ritchie
Michael P. Manning
Bryan M. Kautz
RITCHIE MANNING KAUTZ PLLP
175 N. 27th St.
Suite 1206
Billings, MT 59101
Telephone: (406) 601-1400
Fax: (406) 545-0412
jritchie@rmkfirm.com
mmanning@rmkfirm.com
bkautz@rmkfirm.com

RECEIVED

JUN **3 0** 2021

**BROWNING, KALECZYC,
BERRY & HOVEN, PC**

*Attorneys for Plaintiff*

## MONTANA THIRTEENTH JUDICIAL DISTRICT COURT
## YELLOWSTONE COUNTY

| | |
|---|---|
| ESTATE OF EDWARD R. CHAMPION, by and through Debbie Cellan, individually and as Personal Representative<br><br>*Plaintiff,*<br><br>v.<br><br>BILLINGS SKILLED NURSING FACILITY, LLC D/B/A AVANTARA OF BILLINGS; LEGACY HEALTHCARE FINANCIAL SERVICES, LLC; CASCADE CAPITAL GROUP, LLC; SHAWNA JOHNSON; and JOHN DOES 1-25.<br><br>*Defendants.* | Cause No.: DV-21-0134<br><br>Judge: Rod Souza<br><br>**NOTICE OF A LAWSUIT AND REQUEST TO ACKNOWLEDGE AND WAIVE SERVICE OF A SUMMONS** |

**TO:** BILLINGS SKILLED NURSING FACILITY d/b/a AVANTARA OF
BILLINGS
c/o Oliver H. Goe
Browning, Kaleczyc, Berry & Hoven, P.C.
P.O. Box 1697
Helena, MT 59624

### Why are you getting this?

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you acknowledge and waive formal service of a summons by signing and returning the enclosed acknowledgment and waiver. To avoid these expenses, you must return the signed acknowledgment and waiver within 21 days (42 days if you are the State of Montana, a state agency, or a state officer or employee) from the date shown below, which is the date this notice was sent. Two copies of the acknowledgment and waiver are enclosed, along with a stamped, self-addressed envelope, or other prepaid means for returning one copy. You may keep the other copy.

### What happens next?

If you return the signed acknowledgment and waiver, I will file it with the court. The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 30 days from the date you sign the acknowledgment and waiver (42 days if you are the State of Montana, a state agency, or a state officer or employee sued in an official capacity) to answer the complaint.

If you do not return the signed acknowledgment and waiver within the time indicated, I will arrange to have the summons and complaint served upon you, and I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

1

DATED this 28th day of June, 2021.

RITCHIE MANNING KAUTZ PLLP

By _____
Jason S. Ritchie
Attorney for Plaintiffs

2

RECEIVED

JUN 3 0 2021

BROWNING, KALECZYC
BERRY & HOVEN, PC

Jason S. Ritchie
Michael P. Manning
Bryan M. Kautz
RITCHIE MANNING KAUTZ PLLP
175 N. 27th St.
Suite 1206
Billings, MT 59101
Telephone: (406) 601-1400
Fax: (406) 545-0412
jritchie@rmkfirm.com
mmanning@rmkfirm.com
bkautz@rmkfirm.com

*Attorneys for Plaintiff*

## MONTANA THIRTEENTH JUDICIAL DISTRICT COURT
## YELLOWSTONE COUNTY

| | |
|---|---|
| ESTATE OF EDWARD R. CHAMPION, by and through Debbie Cellan, individually and as Personal Representative | Cause No.: DV-21-0134<br><br>Judge: Rod Souza |
| *Plaintiff,* | |
| v. | **NOTICE OF A LAWSUIT AND REQUEST TO ACKNOWLEDGE AND WAIVE SERVICE OF A SUMMONS** |
| BILLINGS SKILLED NURSING FACILITY, LLC D/B/A AVANTARA OF BILLINGS; LEGACY HEALTHCARE FINANCIAL SERVICES, LLC; CASCADE CAPITAL GROUP, LLC; SHAWNA JOHNSON; and JOHN DOES 1-25. | |
| *Defendants.* | |

**TO:** CASCADE CAPITAL GROUP, LLC
c/o Oliver H. Goe
Browning, Kaleczyc, Berry & Hoven, P.C.
P.O. Box 1697
Helena, MT 59624

## Why are you getting this?

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you acknowledge and waive formal service of a summons by signing and returning the enclosed acknowledgment and waiver. To avoid these expenses, you must return the signed acknowledgment and waiver within 21 days (42 days if you are the State of Montana, a state agency, or a state officer or employee) from the date shown below, which is the date this notice was sent. Two copies of the acknowledgment and waiver are enclosed, along with a stamped, self-addressed envelope, or other prepaid means for returning one copy. You may keep the other copy.

## What happens next?

If you return the signed acknowledgment and waiver, I will file it with the court. The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 30 days from the date you sign the acknowledgment and waiver (42 days if you are the State of Montana, a state agency, or a state officer or employee sued in an official capacity) to answer the complaint.

If you do not return the signed acknowledgment and waiver within the time indicated, I will arrange to have the summons and complaint served upon you, and I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

1

DATED this 28th day of June, 2021.

RITCHIE MANNING KAUTZ PLLP

By _____
   Jason S. Ritchie

   *Attorney for Plaintiffs*

2

Jason S. Ritchie
Michael P. Manning
Bryan M. Kautz
RITCHIE MANNING KAUTZ PLLP
175 N. 27th St.
Suite 1206
Billings, MT 59101
Telephone: (406) 601-1400
Fax: (406) 545-0412
jritchie@rmkfirm.com
mmanning@rmkfirm.com
bkautz@rmkfirm.com

*Attorneys for Plaintiff*

RECEIVED

JUN 3 0 2021

BROWNING, KALECZYC,
BERRY & HOVEN, PC

## MONTANA THIRTEENTH JUDICIAL DISTRICT COURT
## YELLOWSTONE COUNTY

| | | |
|---|---|---|
| ESTATE OF EDWARD R. CHAMPION, by and through Debbie Cellan, individually and as Personal Representative | ) ) ) ) ) | Cause No.: DV-21-0134<br><br>Judge: Rod Souza |
| *Plaintiff,* | ) ) ) | **NOTICE OF A LAWSUIT AND** |
| v. | ) ) ) | **REQUEST TO ACKNOWLEDGE AND WAIVE SERVICE OF A** |
| BILLINGS SKILLED NURSING FACILITY, LLC D/B/A AVANTARA OF BILLINGS; LEGACY HEALTHCARE FINANCIAL SERVICES, LLC; CASCADE CAPITAL GROUP, LLC; SHAWNA JOHNSON; and JOHN DOES 1-25. | ) ) ) ) ) ) | **SUMMONS** |
| *Defendants.* | | |

**TO:** LEGACY HEALTHCARE FINANCIAL SERVICES, LLC
c/o Oliver H. Goe
Browning, Kaleczyc, Berry & Hoven, P.C.
P.O. Box 1697
Helena, MT 59624

**Why are you getting this?**

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you acknowledge and waive formal service of a summons by signing and returning the enclosed acknowledgment and waiver. To avoid these expenses, you must return the signed acknowledgment and waiver within 21 days (42 days if you are the State of Montana, a state agency, or a state officer or employee) from the date shown below, which is the date this notice was sent. Two copies of the acknowledgment and waiver are enclosed, along with a stamped, self-addressed envelope, or other prepaid means for returning one copy. You may keep the other copy.

**What happens next?**

If you return the signed acknowledgment and waiver, I will file it with the court. The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 30 days from the date you sign the acknowledgment and waiver (42 days if you are the State of Montana, a state agency, or a state officer or employee sued in an official capacity) to answer the complaint.

If you do not return the signed acknowledgment and waiver within the time indicated, I will arrange to have the summons and complaint served upon you, and I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

1

DATED this 28th day of June, 2021.

RITCHIE MANNING KAUTZ PLLP

By _____
Jason S. Ritchie

*Attorney for Plaintiffs*

2

Jason S. Ritchie
Michael P. Manning
Bryan M. Kautz
RITCHIE MANNING KAUTZ PLLP
175 N. 27th St.
Suite 1206
Billings, MT 59101
Telephone: (406) 601-1400
Fax: (406) 545-0412
jritchie@rmkfirm.com
mmanning@rmkfirm.com
bkautz@rmkfirm.com

*Attorneys for Plaintiff*

## MONTANA THIRTEENTH JUDICIAL DISTRICT COURT
## YELLOWSTONE COUNTY

| | |
|---|---|
| ESTATE OF EDWARD R. CHAMPION, by and through Debbie Cellan, individually and as Personal Representative <br><br> *Plaintiff,* <br><br> v. <br><br> BILLINGS SKILLED NURSING FACILITY, LLC D/B/A AVANTARA OF BILLINGS; LEGACY HEALTHCARE FINANCIAL SERVICES, LLC; CASCADE CAPITAL GROUP, LLC; SHAWNA JOHNSON; and JOHN DOES 1-25. <br><br> *Defendants.* | Cause No.: DV-21-0134 <br><br> Judge: Rod Souza <br><br><br> **ACKNOWLEDGMENT AND WAIVER OF SERVICE OF SUMMONS – CASCADE CAPITAL GROUP, LLC** |

To:   Jason S. Ritchie, Ritchie Manning Kautz PLLP, 175 N. 27th St.,
Ste. 1206, Billings, Montana 59101:

I have received your request to acknowledge and waive service of a summons in this action along with a copy of the complaint, two copies of this acknowledgment and waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Montana Rule of Civil Procedure 12 within 21 days from the date I sign this acknowledgment and waiver form (or 42 days if I am signing on behalf of the State of Montana, a state agency, or a state officer or employee).

If I fail to do so, a default judgment will be entered against me or the entity I represent.

/
/
/
/
/
/
/
/
/

Date: _____         _____
                          Signature of Attorney

                          _____
                          Printed Name

                          _____
                          Relationship to Entity or
                          Authority to Receive Service

                          _____
                          Address

                          _____
                          Email Address

                          _____
                          Telephone Number

### Duty to Avoid Unnecessary Expenses of Serving a Summons

Rule 4 of the Montana Rules of Civil Procedure has a provision to avoid the unnecessary expenses of serving a summons and complaint. A defendant who fails to return a signed acknowledgment and waiver of service requested by a plaintiff will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the acknowledgment and waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the acknowledgment and waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court.

Jason S. Ritchie
Michael P. Manning
Bryan M. Kautz
RITCHIE MANNING KAUTZ PLLP
175 N. 27th St.
Suite 1206
Billings, MT 59101
Telephone: (406) 601-1400
Fax: (406) 545-0412
jritchie@rmkfirm.com
mmanning@rmkfirm.com
bkautz@rmkfirm.com

*Attorneys for Plaintiff*

## MONTANA THIRTEENTH JUDICIAL DISTRICT COURT
## YELLOWSTONE COUNTY

| | |
|---|---|
| ESTATE OF EDWARD R. CHAMPION, by and through Debbie Cellan, individually and as Personal Representative | Cause No.: DV-21-0134<br><br>Judge: Rod Souza |
| *Plaintiff,* | |
| v. | **ACKNOWLEDGMENT AND WAIVER OF SERVICE OF SUMMONS – LEGACY HEALTHCARE FINANCIAL SERVICES, LLC** |
| BILLINGS SKILLED NURSING FACILITY, LLC D/B/A AVANTARA OF BILLINGS; LEGACY HEALTHCARE FINANCIAL SERVICES, LLC; CASCADE CAPITAL GROUP, LLC; SHAWNA JOHNSON; and JOHN DOES 1-25. | |
| *Defendants.* | |

To:   Jason S. Ritchie, Ritchie Manning Kautz PLLP, 175 N. 27th St.,
Ste. 1206, Billings, Montana 59101:

I have received your request to acknowledge and waive service of a summons in this action along with a copy of the complaint, two copies of this acknowledgment and waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Montana Rule of Civil Procedure 12 within 21 days from the date I sign this acknowledgment and waiver form (or 42 days if I am signing on behalf of the State of Montana, a state agency, or a state officer or employee).

If I fail to do so, a default judgment will be entered against me or the entity I represent.

/
/
/
/
/
/
/
/
/

1

Date: _____                          _____
                                          Signature of Attorney

                                          _____
                                          Printed Name

                                          _____
                                          Relationship to Entity or
                                          Authority to Receive Service

                                          _____
                                          Address

                                          _____
                                          Email Address

                                          _____
                                          Telephone Number

2

### Duty to Avoid Unnecessary Expenses of Serving a Summons

Rule 4 of the Montana Rules of Civil Procedure has a provision to avoid the unnecessary expenses of serving a summons and complaint. A defendant who fails to return a signed acknowledgment and waiver of service requested by a plaintiff will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the acknowledgment and waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the acknowledgment and waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court.

3

Jason S. Ritchie
Michael P. Manning
Bryan M. Kautz
RITCHIE MANNING KAUTZ PLLP
175 N. 27th St.
Suite 1206
Billings, MT 59101
Telephone: (406) 601-1400
Fax: (406) 545-0412
jritchie@rmkfirm.com
mmanning@rmkfirm.com
bkautz@rmkfirm.com

*Attorneys for Plaintiff*

## MONTANA THIRTEENTH JUDICIAL DISTRICT COURT
## YELLOWSTONE COUNTY

| | | |
|---|---|---|
| ESTATE OF EDWARD R. CHAMPION, by and through Debbie Cellan, individually and as Personal Representative | ) ) ) ) ) | Cause No.: DV-21-0134<br><br>Judge: Rod Souza |
| *Plaintiff,* | ) ) | |
| v. | ) ) ) | **ACKNOWLEDGMENT AND WAIVER OF SERVICE OF SUMMONS - BILLINGS SKILLED NURSING FACILITY, LLC d/b/a AVANTARA OF BILLINGS** |
| BILLINGS SKILLED NURSING FACILITY, LLC D/B/A AVANTARA OF BILLINGS; LEGACY HEALTHCARE FINANCIAL SERVICES, LLC; CASCADE CAPITAL GROUP, LLC; SHAWNA JOHNSON; and JOHN DOES 1-25. | ) ) ) ) ) ) ) ) | |
| *Defendants.* | | |

To:  Jason S. Ritchie, Ritchie Manning Kautz PLLP, 175 N. 27th St.,
Ste. 1206, Billings, Montana 59101:

I have received your request to acknowledge and waive service of a summons in this action along with a copy of the complaint, two copies of this acknowledgment and waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Montana Rule of Civil Procedure 12 within 21 days from the date I sign this acknowledgment and waiver form (or 42 days if I am signing on behalf of the State of Montana, a state agency, or a state officer or employee).

If I fail to do so, a default judgment will be entered against me or the entity I represent.

/
/
/
/
/
/
/
/
/

1

Date: _July 19_

_Oliver Goe_
**Signature of Attorney**

_Oliver Goe_
**Printed Name**

_Attorney_
**Relationship to Entity or**
**Authority to Receive Service**

_PO Box 1697, Helena MT 59624_
**Address**

_Oliver@bkbh.com_
**Email Address**

_406-443-6820_
**Telephone Number**

2

### Duty to Avoid Unnecessary Expenses of Serving a Summons

Rule 4 of the Montana Rules of Civil Procedure has a provision to avoid the unnecessary expenses of serving a summons and complaint. A defendant who fails to return a signed acknowledgment and waiver of service requested by a plaintiff will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the acknowledgment and waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the acknowledgment and waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court.

3

Jason S. Ritchie
Michael P. Manning
Bryan M. Kautz
RITCHIE MANNING KAUTZ PLLP
175 N. 27th St.
Suite 1206
Billings, MT 59101
Telephone: (406) 601-1400
Fax: (406) 545-0412
jritchie@rmkfirm.com
mmanning@rmkfirm.com
bkautz@rmkfirm.com

*Attorneys for Plaintiff*

## MONTANA THIRTEENTH JUDICIAL DISTRICT COURT
## YELLOWSTONE COUNTY

| | |
|---|---|
| ESTATE OF EDWARD R. CHAMPION, by and through Debbie Cellan, individually and as Personal Representative )<br><br>Plaintiff, )<br><br>v. )<br><br>BILLINGS SKILLED NURSING FACILITY, LLC D/B/A AVANTARA OF BILLINGS; LEGACY HEALTHCARE FINANCIAL SERVICES, LLC; CASCADE CAPITAL GROUP, LLC; SHAWNA JOHNSON; and JOHN DOES 1-25. )<br><br>*Defendants.* | Cause No.: DV-21-0134<br><br>Judge: Rod Souza<br><br><br>**ACKNOWLEDGMENT AND WAIVER OF SERVICE OF SUMMONS – CASCADE CAPITAL GROUP, LLC** |

To: Jason S. Ritchie, Ritchie Manning Kautz PLLP, 175 N. 27th St., Ste. 1206, Billings, Montana 59101:

I have received your request to acknowledge and waive service of a summons in this action along with a copy of the complaint, two copies of this acknowledgment and waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Montana Rule of Civil Procedure 12 within 21 days from the date I sign this acknowledgment and waiver form (or 42 days if I am signing on behalf of the State of Montana, a state agency, or a state officer or employee).

If I fail to do so, a default judgment will be entered against me or the entity I represent.

/
/
/
/
/
/
/
/
/

1

Date: 7/19/21

_____

Signature of Attorney

_____

Printed Name

_____

Relationship to Entity or
Authority to Receive Service

PO Box 1697, Helena, MT
                    59624
Address

Oliver @ bkbh.com
Email Address

406-443-6820
Telephone Number

2

### Duty to Avoid Unnecessary Expenses of Serving a Summons

Rule 4 of the Montana Rules of Civil Procedure has a provision to avoid the unnecessary expenses of serving a summons and complaint. A defendant who fails to return a signed acknowledgment and waiver of service requested by a plaintiff will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the acknowledgment and waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the acknowledgment and waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court.

3

Jason S. Ritchie
Michael P. Manning
Bryan M. Kautz
RITCHIE MANNING KAUTZ PLLP
175 N. 27th St.
Suite 1206
Billings, MT 59101
Telephone: (406) 601-1400
Fax: (406) 545-0412
jritchie@rmkfirm.com
mmanning@rmkfirm.com
bkautz@rmkfirm.com

*Attorneys for Plaintiff*

## MONTANA THIRTEENTH JUDICIAL DISTRICT COURT
## YELLOWSTONE COUNTY

| | |
|---|---|
| ESTATE OF EDWARD R. CHAMPION, by and through Debbie Cellan, individually and as Personal Representative )<br><br>*Plaintiff,* )<br><br>v. )<br><br>BILLINGS SKILLED NURSING FACILITY, LLC D/B/A AVANTARA OF BILLINGS; LEGACY HEALTHCARE FINANCIAL SERVICES, LLC; CASCADE CAPITAL GROUP, LLC; SHAWNA JOHNSON; and JOHN DOES 1-25. )<br><br>*Defendants.* | Cause No.: DV-21-0134<br><br>Judge: Rod Souza<br><br><br>**ACKNOWLEDGMENT AND WAIVER OF SERVICE OF SUMMONS – LEGACY HEALTHCARE FINANCIAL SERVICES, LLC** |

To: Jason S. Ritchie, Ritchie Manning Kautz PLLP, 175 N. 27th St., Ste. 1206, Billings, Montana 59101:

I have received your request to acknowledge and waive service of a summons in this action along with a copy of the complaint, two copies of this acknowledgment and waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Montana Rule of Civil Procedure 12 within 21 days from the date I sign this acknowledgment and waiver form (or 42 days if I am signing on behalf of the State of Montana, a state agency, or a state officer or employee).

If I fail to do so, a default judgment will be entered against me or the entity I represent.

/
/
/
/
/
/
/
/
/

1

Date: _July 19, 21_

_Oliver Cox_
Signature of Attorney

_Oliver Cox_
Printed Name

_Attorney_
Relationship to Entity or
Authority to Receive Service

PO Box 1697, Helena, MT
                        59624
Address

Oliver@bkbh.com
Email Address

406-443-6820
Telephone Number

2

### Duty to Avoid Unnecessary Expenses of Serving a Summons

Rule 4 of the Montana Rules of Civil Procedure has a provision to avoid the unnecessary expenses of serving a summons and complaint. A defendant who fails to return a signed acknowledgment and waiver of service requested by a plaintiff will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the acknowledgment and waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the acknowledgment and waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court.

3