IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ESTATE OF EDWARD R. CHAMPION, by and through DEBBIE CELLAN, *individually and as Personal Representative*, | CV 21-85-BLG-SPW |
| Plaintiff, | **ORDER** |
| vs. | |
| BILLINGS SKILLED NURSING FACILITY, LLC, *d/b/a* AVANTARA OF BILLINGS; LEGACY HEALTHCARE FINANCIAL SERVICES, LLC; CASCADE CAPITAL GROUP, LLC; SHAWNA JOHNSON; and JOHN DOES 1-25, | |
| Defendants. | |

This action was originally brought by Plaintiff, Estate of Edward R.

Champion (the "Estate") in the Montana Thirteenth Judicial District Court,

Yellowstone County (DV-21-0134) on February 2, 2021, against Legacy

Healthcare Financial Services, LLC; Cascade Capital Group, LLC; and Shawna

Johnson ("Johnson"). (Doc. 8.) On June 16, 2021, the Estate filed an Amended

Complaint, joining Defendant Billings Skilled Nursing Facility, LLC, d/b/a

Avantara of Billings ("Avantara"). (Doc. 9.) Avantara timely removed the action

to this Court, invoking federal question jurisdiction under 28 U.S.C. § 1331 and federal officer removal under 28 U.S.C. § 1442. (Doc. 1.)

Presently before the Court are Avantara's Motion to Dismiss (Doc. 5), the Estate's Motion to Remand (Doc. 12), and Johnson's Motion to Dismiss (Doc. 16). The motions are fully briefed and ripe for the Court's review.

Having considered the parties' submissions, the Court orders that the Estate's Motion to Remand is **GRANTED**, and that Avantara and Johnson's Motions to Dismiss is **DENIED as moot**.

## I.   Background

In April 2020, Edward Champion ("Edward") became a resident at Avantara. (Doc. 9 at ¶ 18.) Edward was 71 years old at the time, and he suffered from congenital deafness and had a history of depressive disorder and generalized anxiety. (*Id.*) Johnson was a registered nurse at Avantara and provided care to Edward while he was a resident there. (*Id.* at ¶ 6.) The Estate alleges that Edward received substandard care while a resident at Avantara, which ultimately resulted in his death.

The Estate alleges Edward could not speak directly to Avantara staff due to his deafness, and could not read the staff's lips due to masks necessitated by the COVID-19 pandemic. (*Id.* at ¶ 19.) Therefore, he required a communication device to interpret and translate sign language. (*Id.*) Plaintiff alleges Avantara

2

knew Edward needed this device to communicate, but never installed it, even after repeated requests from Edward and his family. (*Id.* at ¶¶ 20-23.) Edward was therefore incapable of communicating with staff and his family. (*Id.* at ¶ 23.) The Estate also alleges Avantara inappropriately sedated Edward by administering a prescribed mood stabilizing drug on days he did not experience agitation; failed to regularly bathe Edward; and placed him in a room with a resident who screamed constantly, joking that Edward would not be bothered due to his deafness. (*Id.* at ¶¶ 25-27.)

The Amended Complaint further alleges Avantara knew Edward was a high fall risk but failed to prevent or mitigate this risk and did not follow its Falls Management Plan. (*Id.* at ¶¶ 28-30, 36.) As a result, Edward fell multiple times, two of which required transportation to Billings Clinic. (*Id.* at ¶¶ 30, 31, 34, 47, 48.)

When he was seen at Billings Clinic after a fall on September 4, 2020, Edward tested positive for COVID-19. (*Id.* at ¶ 31.) His condition was stable enough that Billings Clinic released him back to Avantara with specific instructions to monitor his oxygen saturation and other vital signs. (*Id.* at ¶¶ 31, 37.) The Estate alleges Avantara was insufficiently staffed, failed to monitor Edward's vital signs as directed by his physician, and failed to keep his family apprised of his condition. (*Id.* at ¶¶ 32-37.)

3

Edward's condition deteriorated on September 13, 2020. (*Id.* at ¶ 44.)
Edward had a fever; low blood pressure; a high, irregular pulse; and decreased
oxygen saturation. (*Id.*) Plaintiff alleges that Edward fell numerous times that
morning and at one point was found face down in his bed struggling to breathe.
(*Id.* at ¶¶ 47-48.) The Estate alleges that Edward fell three more times over the
next few hours. (*Id.* at ¶ 48.) After his final fall, Edward was found at the foot of
his bed, and he died shortly after. (*Id.*) The Estate alleges Avantara and Johnson
did not call 9-1-1, the on-call doctor, or seek other assistance that morning. (*Id.* at
¶¶ 45-46, 49.)

Based on the foregoing, the Estate asserts eight causes of action: (1)
negligent care; (2) negligent management; (3) negligence per se; (4) negligent
misrepresentation; (5) violation of the Montana Consumer Protection Act; (6)
wrongful death and survival; (7) unjust enrichment; and (8) conspiracy. (*See* Doc.
9.)

On August 6, 2021, Avantara removed the action to this Court based on
three independent theories for federal jurisdiction. (Doc. 1.) The Estate now
moves to remand, arguing that this action must be remanded to Montana state
district court because Avantara's grounds for removal are inappropriate here and
have been consistently rejected by federal courts. (Doc. 13.)

/ / /

4

## II.   Legal Standards

### A.   Federal Question Jurisdiction

Federal courts are courts of limited jurisdiction and possess only that power authorized by Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Removal of civil actions from state court is permitted only when the federal court has original jurisdiction over the action, and removal is not otherwise expressly prohibited by statute. 28 U.S.C. § 1441. In general, federal district courts have original jurisdiction over actions "arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and in actions where there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332. Removal is also permitted under federal officer removal. 28 U.S.C. § 1442.

Removal statutes are to be strictly construed. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (internal citation omitted). The presumption against removal jurisdiction "means that the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Any doubts about federal jurisdiction should be resolved in favor of remand. *Id.*

Under the well-pleaded complaint rule, federal question jurisdiction "exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). It is well-settled that removal must be based on the plaintiff's claims and not on a federal defense, including a defense of preemption. *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 13-14 (1983). Thus, "[a]s a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).

## III.   Discussion

In this case, Avantara argues removal is appropriate because: (1) the Estate's claims fall within the Public Readiness and Emergency Preparedness Act ("PREP Act")—a complete preemption statute—and thus arise under federal law; (2) the Estate's claims raise substantial, disputed federal issues; and (3) federal officer removal applies. (Doc. 1.) Avantara is incorrect. Each of these grounds will be addressed in turn.

### A.   Complete Preemption

Avantara first argues removal is appropriate, and federal jurisdiction exists, because the PREP Act completely preempts the Estate's claims. Complete preemption is an exception to the well-pleaded complaint rule. *Caterpillar*, 482

U.S. at 393. *See also Franchise Tax*, 463 U.S. at 24 ("[I]f a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law."). But complete preemption "applies only where a federal statutory scheme is so comprehensive that it entirely supplants state law causes of action." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 947 (9th Cir. 2014) (internal citation omitted). Complete preemption, therefore, is "rare."[1] *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018). Accordingly, "complete preemption for purposes of federal jurisdiction under § 1331 exists when Congress: (1) intended to displace a state-law cause of action, and (2) provided a substitute cause of action." *City of Oakland*, 969 F.3d at 906. *See also Caterpillar*, 482 U.S. at 393 (Only when "the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule" will complete preemption apply) (internal quotations and citation omitted).

The PREP Act was enacted in 2005. It authorizes the Secretary of the Department of Health and Human Services to issue a declaration determining "that

---

[1] The Supreme Court has recognized only three complete preemption statutes: (1) § 301 of the Labor Management Relations Act; (2) § 502(a) of the Employee Retirement Income Security Act of 1974; and (3) §§ 85 and 86 of the National Bank Act. *City of Oakland v. BP PLC*, 969 F.3d 895, 905-06 (9th Cir. 2020).

a disease or other health condition or other threat to health constitutes a public health emergency . . . ." 42 U.S.C. § 247d-6d(b)(1) (2005). If the declaration is issued, the PREP Act provides "a covered person" immunity from liability for "all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure . . . ." § 247d-6d(a)(1). If immunity applies, an injured person may be compensated "for covered injuries directly caused by the administration or use of a covered countermeasure" from the "Covered Countermeasure Process Fund." 42 U.S.C. § 247d-6e(a). The terms "covered countermeasure" and "covered person" are terms defined in the Act. *See* § 247d-6d(i)(1)-(2). The only exception to this administrative remedy is "for death or serious physical injury proximately caused by willful misconduct," § 247d-6d(d)(1), which, after procedural and exhaustion requirements are met, may be filed in the United States District Court for the District of Columbia, §§ 247d-6d(c)(3), 247d-6e(d)(1), 247d-6d(e)(1).

In March 2020, the Secretary declared "the spread of SARS-CoV-2 or a virus mutating therefrom and the resulting disease, COVID-19," a public health emergency (the "Declaration"). Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19,

85 Fed. Reg. 15,198 (Mar. 17, 2020).[2] As defined by the Fourth Amendment to the Declaration, "covered countermeasures" include:

> (a) Any antiviral, any drug, any biologic, any diagnostic, any other device, any respiratory protective device, or any vaccine manufactured, used, designed, developed, modified, licensed, or procured:
>
>> i. To diagnose, mitigate, prevent, treat, or cure COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom; or
>>
>> ii. to limit the harm that COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom, might otherwise cause;
>
> (b) a product manufactured, used, designed, developed, modified, licensed, or procured to diagnose, mitigate, prevent, treat, or cure a serious or life-threatening disease or condition caused by a product described in paragraph (a) above;
>
> (c) a product or technology intended to enhance the use or effect of a product described in paragraph (a) or (b) above; or
>
> (d) any device used in the administration of any such product, and all components and constituent materials of any such product.

85 Fed. Reg. 79,190, at 79,196.

Administration of covered countermeasures for the COVID-19 emergency "means physical provision of the countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution, and

---

[2] To date, the Declaration has been amended ten times to extend or clarify its scope. *See* 85 Fed. Reg. 21,012 (Apr. 15, 2020); 85 Fed. Reg. 35,100 (June 8, 2020); 85 Fed. Reg. 52,136 (Aug. 24, 2020); 85 Fed. Reg. 79,190 (Dec. 9, 2020); 86 Fed. Reg. 7,872 (Feb. 2, 2021); 86 Fed. Reg. 9,516 (Feb. 16, 2021); 86 Fed. Reg. 14,462 (Mar. 16, 2021); 86 Fed. Reg. 41,977 (Aug. 4, 2021); 86 Fed. Reg. 51,160 (Sept. 14, 2021); 87 Fed. Reg. 982 (Jan. 7, 2022).

dispensing of the countermeasures to recipients; management and operation of

countermeasure programs; or management and operation of locations for

purpose[s] of distributing and dispensing countermeasures." 85 Fed. Reg. 15,198,

at 15,200.

Further, the Fourth Amendment to the Declaration clarified that "*not*

administering a Covered Countermeasure to one individual in order to administer it

to another individual can" fall under the PREP Act.[3] 85 Fed. Reg. 79,190, at

79,197 (emphasis original). The Declaration also provides, however, that "whether

immunity is applicable will depend on the particular facts and circumstances" of

each case, and makes clear that "a liability claim alleging an injury . . . not directly

related to the countermeasure activities is not covered . . . ." 85 Fed. Reg. 15,198,

at 15,200.

In support of its argument for complete preemption, Avantara relies heavily

on an Advisory Opinion from the Department of Health & Human Services Office

of General Counsel ("Advisory Opinion"), purporting to establish the PREP Act as

---

[3] As an example, the Declaration provides, "consider a situation where there is only one dose of a COVID-19 vaccine, and a person in a vulnerable population and a person in a less vulnerable population both request it from a healthcare professional. In that situation, the healthcare professional administers the one dose to the person who is more vulnerable to COVID-19. In that circumstance, the failure to administer the COVID-19 vaccine to the person in a less-vulnerable population 'relat[es] to . . . the administration to' the person in a vulnerable population. . . . Prioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declaration's liability protections." 85 Fed. Reg. 79,190, at 79,197.

a complete preemption statute.  Advisory Opinion 21-01 on the Public Readiness and Emergency Preparedness Act Scope of Preemption Provision, Dep't Health & Hum. Servs., General Counsel Advisory Opinion (Jan. 8, 2021).  But Avantara's reliance on the Advisory Opinion is unavailing.

As a preliminary matter, the Advisory Opinion explicitly provides "[i]t is not a final agency action or final order.  It does not have the force or effect of law."  *Id.* at 5.  Additionally, it is clear that "[i]nterpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference."[4]  *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000). *See also Our Children's Earth Found. v. U.S. EPA*, 527 F.3d 842, 852 n.3 (9th Cir. 2008) (An "agency's position on jurisdiction is not entitled to" *Chevron* deference).  Such opinions are "'entitled to respect' . . . to the extent that those interpretations have the 'power to persuade.'"  *Christensen*, 529 U.S. at 587 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

Moreover, contrary to the Advisory Opinion, the overwhelming majority of federal courts have determined that the PREP Act is not a complete preemption

---

[4] In *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-44 (1984), the Supreme Court held that where Congress has delegated authority to an agency, courts must defer to the agency's interpretation of an ambiguous statute "unless [the interpretation is] arbitrary, capricious, or manifestly contrary to the statute."

11

statute, and have found federal jurisdiction lacking on those grounds.[5]  In fact, the

Ninth Circuit recently rejected the arguments made by Avantara in *Saldana v.*

*Glenhaven Healthcare LLC*, 2022 WL 518989, at *5 (9th Cir. 2022).  The Ninth

Circuit found the Advisory Opinion was the agency's opinion on federal court

jurisdiction, which is not entitled to *Chevron* deference.  *Id.*  Therefore, instead of

deferring to the Advisory Opinion, the court applied the two-part test for complete

preemption articulated in *City of Oakland*, 969 F.3d at 906, and examined whether

Congress: (1) intended to displace a state-law cause of action; and (2) provided a

substitute cause of action.  *Id.*

As discussed above, the PREP Act provides a "covered person" immunity

for use of a "covered countermeasure."  42 U.S.C. § 247d-6d(a)(1).  But the PREP

Act only provides a federal cause of action "for death or serious physical injury

proximately caused by willful misconduct," as defined under the Act.  § 247d-

6d(d).  The administrative compensation fund, § 247d-6e(a), is the remedy for all

other claims within the PREP Act's scope.  The Ninth Circuit in *Saldana*, thus,

---

[5] *See, e.g., Stone v. Long Beach Healthcare Ctr., LLC*, 2021 WL 1163572 (C.D. Cal. Mar. 26, 2021); *Padilla v. Brookfield Healthcare Ctr.*, 2021 WL 1549689 (C.D. Cal. Apr. 19, 2021); *Acra v. Cal. Magnolia Convalescent Hosp., Inc.*, 2021 WL 2769041 (C.D. Cal. July 1, 2021); *Estate of Heim v. 1495 Cameron Ave., LLC*, 2021 WL 3630374 (C.D. Cal. Aug. 17, 2021); *Estate of Jones through Brown v. St. Jude Operating Co., LLC*, 524 F. Supp. 3d 1101 (D. Or. Mar. 8, 2021); *Dupervil v. All. Health Operations, LLC*, 516 F. Supp. 3d 238 (E.D.N.Y. Feb. 2, 2021); *Leroy v. Hume*, 2021 WL 3560876 (E.D.N.Y. Aug. 12, 2021); *Bolton v. Gallatin Ctr. for Rehab. & Healing, LLC*, 535 F. Supp. 3d 709 (M.D. Tenn. Apr. 21, 2021); *Eaton v. Big Blue Healthcare, Inc.*, 480 F. Supp. 3d 1184 (D. Kan. Aug. 19, 2020); *Goldblatt v. HCP Prairie Village KS OPCO LLC*, 516 F. Supp. 3d 1251 (D. Kan. Jan. 29, 2021).

determined the PREP Act was not a complete preemption statute, noting, "[t]he PREP Act neither shows the intent of Congress to displace [] non-willful misconduct claims . . . nor does it provide substitute causes of action . . . ." 2022 WL 518989, at *5. *See also Padilla*, 2021 WL 1549689, at *4 ("Because the PREP Act does not provide an exclusive cause of action to be filed in federal court, it does not completely preempt all state law claims.").[6]

In addition, even assuming the PREP Act was a complete preemption statute, the Estate's state law claims do not fall within the ambit of the PREP Act. The PREP Act applies to "all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered

---

[6] Avantara cites only two cases that found the PREP Act is a complete preemption statute, *Garcia v. Welltower OPCO Grp. LLC*, 522 F. Supp. 3d 734 (C.D. Cal. Feb. 10, 2021) and *Rachal v. Natchitoches Nursing & Rehab. Ctr. LLC*, 2021 WL 5449053 (W.D. La. Apr. 30, 2021). In determining that the PREP Act provides for complete preemption, the court in *Garcia* gave considerable deference to the Advisory Opinion. 522 F. Supp. 3d at 742-43. As discussed above, however, *Saldana* held that the Advisory Opinion is not entitled to *Chevron* deference and concluded the PREP Act does not satisfy the Ninth Circuit's two-prong complete preemption test. 2022 WL 518989, at *5. In addition, Avantara, relying on the comparison set forth in *Rachal*, likens the PREP Act to the Air Transportation Safety and System Stabilization Act of 2001 ("ATSSSA"). (Doc. 19 at 4.) Following the September 11, terrorist attacks, the Second Circuit held the ATSSSA was a complete preemption statute because it created a victim compensation fund, immunity to airlines, an exclusive federal cause of action, and an exclusive venue. 2021 WL 5449053, at *2 n. 3. The court in *Rachal* found the PREP Act similar because it creates a compensation fund, provides immunity to "covered persons," establishes a cause of action for "willful misconduct," and provides a venue. *Id.* Absent from *Rachal* and Avantara's argument, however, is the acknowledgement that "crucially, the ATSSSA *also created* an alternative, *exclusive* federal cause of action for claims 'arising out' of" 9/11, whereas "the PREP Act is an immunity statute that simply limits the causes of actions for claims falling within its ambit, leaving only claims involving 'willful misconduct' as able to be adjudicated in federal court, after administrative remedies have been exhausted." *Dupervil*, 516 F. Supp. 3d at 253 (emphasis in original). In sum, the Court finds these cases unpersuasive and agrees with the vast majority of decisions holding the PREP Act is not a complete preemption statute.

countermeasure . . . ."  § 247d-6d(a)(1).  A covered countermeasure means "a qualified pandemic or epidemic product," including any antiviral, drug, biologic, diagnostic, respiratory or other device, or vaccine used "to diagnose, mitigate, prevent, treat, or cure COVID-19 . . . ."  § 247d-6d(i)(1)(A); 85 Fed. Reg. 79,190, at 79,196.  As noted above, the failure to administer a covered countermeasure may fall within the PREP Act's scope.  85 Fed. Reg. 79,190, at 79,196.

Here, although it is true Edward contracted COVID-19 while he was a resident at Avantara, the Estate's claims are not premised on Avantara's use, or failure to use, certain drugs, biologicals, or devices to diagnose, mitigate, prevent, or treat Edward's COVID-19 infection, but instead are based on "their utter inaction in caring for Edward." (*See* Docs. 9; 13 at 22.)  The Estate alleges, for example, negligent care for failing to set up Edward's communication device, failing to bathe him regularly, unnecessarily medicating him, rooming him with a resident who screamed constantly, failing to prevent or mitigate his fall risk, failing to follow its fall policies, ignoring his physician's orders, and failing to adequately communicate with his family.  (Doc. 9 at ¶ 55.)  The Estate's claims do not present a scenario, such as the example given in the Declaration, where a less vulnerable individual did not receive the only dose of a COVID-19 vaccine so that it could be given to a more vulnerable individual.  Instead, the Estate claims Edward simply was not cared for at all, regardless of his underlying illness.  The Estate's claims do

14

not have "a causal relationship with the administration . . . of a covered

countermeasure," and thus, the PREP Act does not apply.  § 247d-6d(a)(2)(B).

In sum, the PREP Act is not a complete preemption statute, and even if it

were, the Estate's claims are not within its scope.  Accordingly, the Court does not

have jurisdiction on this basis.

### B.    Substantial, Disputed Federal Question

Next, Avantara asserts federal jurisdiction exists under *Grable & Sons Metal*

*Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), because the Estate's

claims raise substantial, disputed federal issues "related to the Declaration . . . and

Defendants' action in response" to COVID-19.  (Doc. 1 at ¶ 49.)

In a "special and small category of cases," federal jurisdiction over a state-

law claim exists "if a federal issue is: (1) necessarily raised, (2) actually disputed,

(3) substantial, and (4) capable of resolution in federal court without disrupting the

federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258

(2013) (internal quotations and citations omitted).  In other words, a state-law

claim "might still 'arise under' the laws of the United States if a well-pleaded

complaint established that its right to relief under state law requires resolution of a

substantial question of federal law in dispute between the parties." *Franchise Tax*,

463 U.S. at 13.  The availability of a federal defense, however, is never a basis for

removal. *Id.* at 13-14.

The Ninth Circuit addressed this same issue in *Saldana*. The Court noted that the plaintiff's complaint in that case stated four causes of action, all arising under California law. *Saldana*, 2022 WL 518989, at *6. The Court, therefore, determined that the complaint did not raise questions of federal law. *Id.* The Court also pointed out that whether the defendant intended to raise a defense under the PREP Act was immaterial, since a federal defense is not sufficient to invoke the doctrine. *Id.*

The same is true here. The Estate alleges eight causes of action under Montana law: negligent care; negligent management; negligence per se; negligent misrepresentation; violation of the Montana Consumer Protection Act; wrongful death and survival; unjust enrichment; and conspiracy. (*See* Doc. 9.) On the face of the Amended Complaint, the Estate's claims do not raise questions of federal law under the PREP Act. The only claim that mentions federal law, negligence per se, alleges violations of Montana law and "the federal public health regulations set forth in 42 C.F.R. Subpart B." (Doc. 9 at ¶ 70.) A claim based on both violations of state and federal law, however, does not necessarily 'arise under' federal law. *See Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996) ("When a claim can be supported by alternative and independent theories—one of which is a state law theory and one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim.").

Accordingly, the Estate's state-law claims do not necessarily raise a substantial, disputed federal issue. Moreover, the fact that Avantara may anticipate a defense under the PREP Act does not impact this Court's jurisdictional inquiry. Thus, the Court does not have federal jurisdiction under the *Grable* doctrine. *See also Padilla*, 2021 WL 1549689, at *5-6 (determining plaintiff's state-law claims for elder abuse and negligence did not necessarily raise a disputed federal issue and remanding to state court); *Gwilt v. Harvard Square Ret. & Assisted Living*, 537 F. Supp. 3d 1231, 1238, 1243 (D. Colo. May 7, 2021) (finding PREP Act did not apply to plaintiff's state-law claims for wrongful death, survival action negligence, negligence per se, and breach of contract, and thus, "[could not] serve as a substantial question to create subject matter jurisdiction"); *Acra*, 2021 WL 2769041, at *6 (concluding plaintiffs' claims did "not implicate the PREP Act, and therefore [did] not invoke federal question jurisdiction" under *Grable*); *Estate of Heim*, 2021 WL 3630374, at *4 (holding no federal issue was necessarily raised where the issue "relate[d] to Defendants' potential defense, not the claims alleged by Plaintiffs").

Therefore, removal of this action from state court based upon a substantial, disputed federal question was inappropriate.

C.      **Federal Officer Removal**

17

Last, Avantara argues removal is proper under 28 U.S.C. § 1442(a)(1) because they were acting under the direction of a federal officer.

Federal officer removal permits an action commenced in state court to be removed to federal court if it is against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . . ." 28 U.S.C. § 1442(a)(1). The Supreme Court has held that private parties may remove a state court action under the statute "only if they were authorized to act with or for [federal officers or agents] in affirmatively executing duties under . . . federal law." *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 151 (2007) (internal quotations and citation omitted). "[P]recedent and statutory purpose make clear that the private person's 'acting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Id.* at 152 (emphasis original). Although the statute is to be "liberally construed," simply complying with the law does not bring a private person within its scope. *Id.* at 147, 152. Thus, to remove a state action, a defendant must establish that: "(a) it is a person within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a colorable federal defense." *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018) (internal quotations and citation omitted).

18

Here, Avantara asserts federal officer removal exists because healthcare providers were declared "critical infrastructure[s]" during the pandemic and were faced with increased regulations from the federal government that amount to more than "a mere response to federal regulation." (Doc. 19 at 27.)  Specifically, Avantara cites "detailed directives" issued by the Centers for Medicare & Medicaid Services ("CMS") and the Centers for Disease Control and Prevention ("CDC") during the pandemic that "specifically instructed facilities on clinical and operation actions," compared to the "general" regulations in place pre-pandemic. (*Id.* at 24.)

Once again, the Ninth Circuit rejected the same argument in *Saldana*.  With respect to agency communications, the Ninth Circuit noted that such agency recommendations "show nothing more than regulations and recommendations for nursing homes, covering topics such as COVID-19 testing, use and distribution of personal protective equipment, and best practices to reduce transmission within congregate living environments." *Saldana*, 2022 WL 518989, at *3.  One CDC summary cited by Avantara here, for example, *recommends* that healthcare facilities screen patients for possible COVID-19 infection and *recommends* that "[c]linicians *should* immediately notify" infection control and the local health department if a patient tests positive. *Update and Interim Guidance on Outbreak of 2019 Novel Coronavirus (2019-nCoV)*, Centers for Disease Control and

Prevention (Feb. 1, 2020), https://emergency.cdc.gov/han/HAN00427.asp

(emphasis added). *See also COVID-19 Long-Term Care Facility Guidance*,

Centers for Medicare & Medicaid Services (Apr. 2, 2020),

https://www.cms.gov/files/document/4220-covid-19-long-term-care-facility-

guidance.pdf ("The CMS and CDC are issuing new recommendations to State and

local governments and long-term care facilities (also known as nursing homes) to

help mitigate the spread of the 2019 Novel Coronavirus (COVID-19)").  The vast

majority of courts considering this issue, if not all, have rejected the argument that

entities acting pursuant to these recommendations are acting pursuant to a federal

officer's direction within the meaning of § 1442(a). *See, e.g.*, *Leroy*, 2021 WL

3560876, at *7 (finding federal officer removal did not apply where "defendants

have merely shown that they were complying with federal directives"); *Estate of*

*Heim*, 2021 WL 3630374, at *5 (holding defendants failed to establish they acted

pursuant to a federal officer's directions where they relied on "nothing more than

general regulations and public directives regarding the provision of medical

services") (internal quotations and citation omitted); *Acra*, 2021 WL 2769041, at

*7 (holding federal officer removal did not apply based on compliance with federal

orders and directives relating to COVID-19); *Dupervil*, 516 F. Supp. 3d at 260

(finding defendants had failed to show a "special relationship with the federal

government or otherwise show [they] were anything more than highly regulated

20

private persons or entities complying with federal laws and regulations"); *Khalek v. S. Denver Rehab., LLC*, 543 F. Supp. 3d 1019, 1029-30 (D. Colo. June 11, 2021); *Estate of Maglioli v. Andover Subacute Rehab. Ctr. I*, 478 F. Supp. 3d 518, 533-34 (D.N.J. Aug. 12, 2020).

The designation as a critical infrastructure also does not establish that Avantara was "acting under" a federal officer or agency. Indeed, this argument was also expressly rejected by the Ninth Circuit. *Saldana*, 2022 WL 518989, at *4 ("'It cannot be that the federal government's mere designation of an industry as important—or even critical—is sufficient to federalize an entity's operations and confer federal jurisdiction.'") (quoting *Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 740 (8th Cir. 2021)).

In addition, Avantara's analogy to *Fields v. Brown*, 519 F. Supp. 3d 388 (E.D. Tex. Feb. 11, 2021) is unpersuasive. In *Fields*, as here, Tyson Foods argued federal officer removal existed because it was designated as a "critical infrastructure." 519 F. Supp. 3d at 392. The Court, in finding a basis for removal under 28 U.S.C. § 1442, noted Tyson "interacted with multiple government agencies," was "in close contact with officials at the U.S. Department of Homeland Security and the U.S. Department of Agriculture regarding continued operations," met with the President, and worked directly with the United States Food Safety and Inspection Service. *Id.* In contrast, here, Avantara has provided only broad

recommendations given to healthcare facilities during the pandemic.  Accordingly, the Court finds there is no causal nexus to authorize removal under § 1442.

In sum, it is well-established that Avantara, as the defendant seeking removal, has the burden of establishing that removal is proper.  *Gaus*, 980 F.2d at 566.  Avantara has failed to do so here.  The Court, therefore, lacks subject matter jurisdiction and must remand this case for further proceedings.  Avantara's request to hold jurisdictional discovery is, thus, unnecessary.  Given the Court's determination that remand is appropriate, the Court finds Avantara and Johnson's Motions to Dismiss to be moot, and accordingly orders that the motions be denied.

IV.  **Conclusion**

Based on the foregoing, **IT IS ORDERED** that:

1.    The Estate's Motion to Remand (Doc. 12) is **GRANTED**;

2.    Avantara's Motion to Dismiss (Doc. 5) is **DENIED as moot**; and

3.    Johnson's Motion to Dismiss (Doc. 16) is **DENIED as moot**.

**IT IS ORDERED**.

DATED this _17th_ day of March, 2022.

SUSAN P. WATTERS
United States District Court Judge

22